IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 18 CR 682 |
| | ) | Judge Chang |
| BRANDON HANAHAN, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

### DEFENDANT'S SENTENCING MEMORANDUM

Defendant **BRANDON HANAHAN**, by his attorney, **JAMES D. TUNICK,** , and pursuant to Rule 32 of the Federal Rules of Criminal Procedure, 18 U.S.C. Section 3553(a), and the Supreme Court's opinion in *United States v. Booker,* 543 U.S. 220, 125 S.Ct. 738 (2005), hereby submits the following sentencing memorandum:

### Background

On February 15, 2023, Hanahan pleaded guilty to knowingly employing, using, persuading, inducing, and enticing a minor, namely Minor 1 and Minor 2, to engage in sexually explicit conduct, in violation of 18 U.S.C. §2251(a)(Count 3). Additionally, Hanahan pleaded guilty to possessing an image of Minor 2, who had not attained the age of 12 years old, in violation of 18 U.S.C. §2252A(a)(5)(B)(Count 5). The conduct in Count 3 occurred over the social media site Instagram when Hanahan was 19 years old. The conduct in Count 5 occurred when Hanahan was twenty years old. At the inception of Minor 1's social media relationship with Hanahan Minor 1 told him that she was 17 years old.

Prior to his guilty plea, Hanahan underwent a psychosexual risk evaluation by Dr. Mark Brenzinger. The personal background information, mental health issues, and alcohol and drug use provided to Dr. Breniznger is consistent with the information that Hanahan provided during the

presentence investigation interview. Dr. Breniznger performed several tests to make his assessment. Specifically, Dr. Brenzinger performed (1) Shipley-2; (2) Personality Assessment Inventory; (3) Personal History Checklist; (4) Multiphasic Sex Inventory Second Edition (MSI-II). The results of several of these these tests indicated that Mr. Hanahan is a moderate to low risk for sexually victimizing others.[1]

The PSR calculates a total offense level of 42 and a criminal history category of I with a guideline imprisonment range of 360 months to 600 months

**Sentencing Memorandum**

    **1. Legal Standards**

While the defense does not contest the advisory guideline calculation, as the Court is aware, the Federal Sentencing Guidelines serve as a "starting point" and "initial benchmark" when determining a just and appropriate sentence. *See Gall v. United States*, 552 U.S. 38, 49-51 (2007); *Pepper v. United States*, 562 U.S. 476, 490 (2011); *Kimbrough v. United States*, 552 U.S. 85, 108 (2007) (quoting *Gall*, 552 U.S.at 49); *United States v. Hill*, 645 F.3d 900, 905 (7th Cir. 2011). In this case, the guidelines have even more of a diminished role in the imposition of a just sentence. Thus, while the Court is obligated to calculate the guideline range, this case must be determined based on consideration of the § 3553(a) factors to arrive at a just and merciful sentence that is "sufficient, but not greater than necessary" to achieve the purposes of sentencing. 18 U.S.C. § 3553(a). *See United States v. Lopez*, 634 F.3d 948, 953-954 (7th Cir. 2011) (internal citations omitted) ("the Guidelines are, after all, guidelines [that] must be considered seriously and applied carefully…. In the end, however, the

---

[1] According to Dr Brenzinger, Hanahan does not suffer from major cognitive impairment, reports significant anxious and depressed mood states, and reports feeling isolated, misunderstood, and alienated by others. He expressed difficulties with thinking and his self-identity. Hanahan also reported difficulties in functioning, along with an acute need for help in dealing with his problems. Additionally, according to Dr. Breniznger. Hanahan feels inhibited, anxious, insecure and is embarrassed by his looks.

defendant's sentence is the responsibility of the district judge, after careful consideration of all the relevant factors under 18 U.S.C. § 3553(a).").

Adequate consideration of the § 3553(a) sentencing factors helps ensure that the sentencing decision is individualized, as it must be. The Supreme Court made this point clear when it emphasized that the punishment imposed "should fit the offender and not merely the crime." *Pepper*, 562 U.S. at 487-88 (citations omitted).*See also Gall*, 552 U.S. at 52, (quoting *Koon v. United States*, 518 U.S. 81, 113 (1996));*see also United States v. Moore*, 784 F.3d 398, 405 (7th Cir. 2015) (quoting *Gall*, 552 U.S. at 49-50) ("The court must consider all of the section 3553(a) factors, making 'an individualized assessment based on the facts presented.'").

The "sufficient, but not greater than necessary" standard—also known as the "parsimony" clause—is the "overarching provision" of § 3553(a). *Kimbrough*, 552 U.S. at 101. By its terms, that provision instructs the Court to consider a sentence that is the *least* severe, *i.e.*, not greater than necessary. *See, United States v. Santoya*, 493 F.Supp.2d 1075, 1077 (E.D. Wis. 2007) ("This is the so-called 'parsimony provision,' which requires district courts to impose the minimum punishment needed to satisfy the purposes of sentencing—just punishment, deterrence, protection of the public and rehabilitation of the defendant."). The Court has ample authority to sharply depart from the "starting point" provided by the advisory guidelines. Nevertheless, it must be pointed out that those guidelines have been subjected to widespread criticism, which provides even more justification to question and deviate from them.

**The Flaws in the Severe Child Pornography Guidelines**

Federal courts, the Sentencing Commission, and even the Department of Justice have all criticized the child pornography guidelines. Some of this criticism has included outright rejection of their application by numerous federal courts. For instance, Judge Weinstein from the Eastern District of New York opined as follows: the child pornography Guidelines are "fundamentally

different from most and . . . unless applied with great care, can lead to unreasonable sentences that are inconsistent with what § 3553 requires." *United States v. Dorvee*, 616 F.3d 174, 184 (2d Cir. 2010). Acceptance of this fact enhances a sentencing court's ability to properly comply with its duty to impose sentences that reflect the statutory goals of sentencing and are based on a required individualized assessment of the facts presented. *United States v. D.M.*, 942 F.Supp 2d 327, 352 (E.D.N.Y. 2013). *See also United States v. Pelloski*, 31 F.Supp.3d 952, 955-56 (S.D. Ohio 2014) (quotation and citations omitted) ("There is widespread agreement among judges, lawyers and legal scholars that the guidelines for child pornography offenses are seriously flawed….. Indeed, the belief that the child pornography sentencing guidelines are flawed is shared by the Sentencing Commission and the United States Department of Justice.").[2]

Part of the peculiar and troubling nature of the child pornography guidelines is that they have been amended nine times since their inception in 1987, with each amendment increasing, sometimes dramatically, the severity of the base offense level and adding specific offense characteristics. For instance, the base offense level for receiving child pornography was 13 at the inception of the guideline. In response to a Congressional directive, the Commission raised the base offense level to 15 in 1991. Then, the base offense level increased to 17 in November 1996. Section 2G2.2 was amended in 2000 and 2003 to add specific offense characteristics, but the base offense level remained at 17 for receipt of child pornography. In 2004, and in response to another

---

[2] *United States v. Dorvee*, 616 F.3d 174 (2d Cir. 2010) exemplifies the Court's discretion to deviate from the child pornography guidelines set forth in U.S.S.G. § 2G2.2 pursuant to *Kimbrough*. In *Dorvee*, the Second Circuit concluded that a 240-month sentence for distribution of child pornography was substantively unreasonable. *Id.* at 183. After a thorough analysis that discredited the rationales behind the strict guidelines for nonproduction offenses, the Second Circuit wrote: "District judges are encouraged to take seriously the broad discretion they possess in fashioning sentences under § 2G2.2—ones that can range from non-custodial sentences to the statutory maximum—bearing in mind that they are dealing with an eccentric Guideline of highly unusual provenance which, unless carefully applied, can easily generate unreasonable results."

Congressional directive, the base offense level increased markedly from 17 to 22. *See generally* U.S. Sentencing Commission, *The History of the Child Pornography Guidelines* (2009).3 The guideline for production cases was also ratcheted up over the years based primarily on Congressional directives. In 1987, the base offense level for § 2G2.1 was 25. In 1996, the base offense level was increased to 27 pursuant to a Congressional directive. And in 2004, in response to the PROTECT Act, the base offense level shot up from 27 to 32 while adding a host of enhancements. *See* U.S. Sentencing Commission 2012 Report to the Congress: Federal Child Pornography Offenses, p. 249.

The Commission has criticized these congressionally directed increases in the non-production child pornography guidelines. In 1991, when Congress considered directing the Commission to revoke a lower base offense level for receipt of child pornography, the Chair of the Commission informed the House of Representatives that the proposed action "'would negate the Commission's carefully structured efforts to treat similar conduct similarly and to provide proportionality among different grades of seriousness,' and would instead 'require the Commission to rewrite the guidelines for these offenses in a manner that will reintroduce sentencing disparity among similar defendants.'" *Dorvee*, 616 F.3d at 185 (citing Troy Stabenow, *Deconstructing the Myth of Careful Study: A Primer on the Flawed Progression of the Child Pornography Guidelines*, Jan. 1, 2009, at pp. 4-9).5 The Commission also opposed the two-level enhancement for computer use that was added in 1996 on the grounds that it failed to distinguish between serious and ordinary offenders. *Dorvee*, 616 F.3d at 186. After the latest increases, the Commission sought permission to revise the guidelines using its expertise and review of empirical evidence, which it had been unable to do in response to Congressional directives. *See, United States v. Jenkins*, 854 F.3d 181, 188 (2d Cir. 2017) (quoting *Dorvee*, 616 F.3d at 184-86 ("we observed that the Sentencing Commission has not been able to apply its expertise but instead has increased the severity of penalties 'at the direction of Congress,' despite 'often openly oppos[ing] these Congressionally directed changes.'").

Counsel recognizes that much of the criticism has been levied against U.S.S.G.§ 2G2.2, the guideline that covers production, receipt, and transportation offenses, rather than U.S.S.G. § 2G2.1, which is the primary driver of the guidelines in this case. However, courts have also criticized U.S.S.G. §2G2.1 for the same or similar reasons directed at § 2G2.2. *See*, *e.g.*, *United States v. Jacob*, 631 F.Supp.2d 1099, 1115 (N.D. Iowa 2009) (rejecting § 2G2.1 on "categorical, policy grounds" also present in § 2G2.2).

A key and common criticism of the child pornography guidelines is that they do not distinguish between the most serious offenders and the run-of-the mill cases because the specific offense characteristics apply in nearly every case and are thus "inherent" to the offense itself. *See Jacob*, 631 F.Supp.2d at 1114-15; *Dorvee*, 616 F.3d at 186. Due to these "inherent" enhancements, the Second Circuit in *Dorvee* observed how "adherence to the Guidelines results in virtually no distinction between the sentences for defendants like Dorvee, and the sentences for the most dangerous offenders who, for example, distribute child pornography for pecuniary gain and who fall in higher criminal history categories." *Id.* at 187. That non-differentiating result is "fundamentally incompatible with § 3553(a)." *Id. See also Jenkins*, 854 F.3d at 190. In *United States v. Huffstatler*, 571 F.3d 620, 623 (7th Cir. 2009), the Seventh Circuit rejected a defendant's argument that U.S.S.G. § 2G2.1 "must" be disregarded as invalid if the sentencing court found that they resulted from methodological flaws, such as the lack of empirical fact-finding. Counsel does not make that argument. If anything, *Huffstatler*, reinforced the sentencing court's ability to disagree with the guidelines based on an unsound methodological footing and then deviate from the guidelines accordingly pursuant to *Kimbrough*. Further, *Huffstatler* tellingly noted how it was "perhaps for good reason, the government did not take issue with *Huffstatler's* premise that the child-exploitation guidelines lack an empirical basis." *Id.* ("Thus, here, as in *Dorvee*, § 2G2.2 cannot 'bear the weight assigned it because the cumulation of repetitive, all-but-inherent, enhancements yielded, and the

district court applied, a Guideline range that failed to distinguish between Jenkins's conduct and other offenders whose conduct was far worse. …. It was substantively unreasonable for the district court to have applied the § 2G2.2 enhancements in a way that placed Jenkins at the top of the range with the very worst offenders where he did not belong.").

One of the most blatant examples of an "inherent" offense characteristic is the use of a computer (U.S.S.G. § 2G2.2(b)(6)), for which Hanahan receives two additional offense level points for each offense and stipulated offense. While this enhancement may have been relevant when first enacted, today virtually every child pornography offense involves the use of a computer, and the enhancement therefore applies in nearly every case. Indeed, it did not take long before the Commission itself criticized this enhancement for failing to distinguish between serious and average offenders. *See, United States v. Biddle*, 2014 U.S. Dist. LEXIS 143733, at *18-19 (Case No. 1:13-CR-50-TLS; N.D. Ind. Oct. 9, 2014) (citation omitted) ("The Sentencing Commission has previously criticized the two-level computer enhancement, finding that the enhancement did not distinguish between serious commercial distributors of online pornography and run-of-the-mill users."). Moreover, in Hanahan's case, the use of a computer was also part of the offense conduct itself. *See, United States v. Robinson*, 669 F.3d 767, 778 (6th Cir. 2012) (discussing the enhancement for "use of a computer"). While this does not create a "double counting" problem under case law, it nevertheless subjects the enhancement to reasoned criticism. Indeed, because it applies in almost every case, this offense characteristic fails to distinguish more serious offenders who deserve greater punishment. Thus, some of the enhancements that elevate Hanahan's sentencing range do not necessarily capture distinct harms. They describe conduct that is "essentially inherent to the crime itself," not conduct that is uniquely aggravating or that evidences greater harms. *United States v. Kelly*, 868 F.Supp.2d 1202, 1208-09 (D.N.M 2012). *See, United States v. Pyles*, 862 F.3d 82, 97-98 (D.C. Cir. 2017) ("This

panoply of enhancements applies so frequently that it serves to conflate offenders rather than differentiate among them.").

The criticism of the child pornography guidelines has led some to conclude that those guidelines are not the product of the Commission's deliberation, but rather of Congressional manipulation resulting in an overly harsh sentencing regime based more on politics and morality than empirical evidence. *See, United States v. Stone*, 575 F.3d 83, 97 (1st Cir. 2009) ("we wish to express our view that the sentencing guidelines at [USSG § 2G2.2] are in our judgment harsher than necessary"); *United States v. McNerney*, 636 F.3d 772, 777 (6th Cir. 2011) (citations omitted) (recognizing that "some courts and commentators have questioned the wisdom of the congressionally-directed Child Pornography Sentencing Guideline because they were the product of Congressional mandate rather than the Commission's preferred systematic, empirical approach"); *United States v. R.V.*, 157 F.Supp.3d 207, 252 (E.D.N.Y. 2016) ("most serious non-production child pornography guidelines were amended at the direction of Congress rather than through the Sentencing Commission's empirical approach."); *United States v. Johnson*, 588 F.Supp.2d 997, 1003 (S.D. Iowa 2008) ("As far as this Court can tell, [the Congressional modifications to the child pornography guidelines] do not appear to be based on any sort of empirical data, and the Court has been unable to locate any particular rationale for them beyond the general revulsion that is associated with child exploitation-related offenses."). While the § 3553(a) factors in this case amply justify a significant variance from the advisory guidelines, these well-reasoned criticisms of the child pornography guidelines should also be kept in mind.

  2.  The § 3553(a) Factors

  a. "Just Punishment"—§ 3553(a)(2)(A)

It is common practice for defense attorneys, prosecutors, and federal judges to address the issue of "just punishment" at the end of their sentencing presentations and oral pronouncements of

sentence, respectively. That is typically because one often cannot determine what is "just punishment" without first appreciating the nature and circumstances of the offense, as well as the history and characteristics of the defendant, are logically set forth in § 3553(a)(1), which immediately precedes the "just punishment" clause in (a)(2)(A). However, in this particular case, judicial contemplation of the question of "just punishment" at the outset of the § 3553(a) analysis is both necessary and helpful. Counsel submits that the only "just punishment" would be the statutory minimum of 15 years in the Federal Bureau of Prisons.

On its own, the term "just punishment" is vague and amorphous. The qualifier "just" has several definitions, including "having a basis in or conforming to fact or reason" and "being what is merited" or "deserved."7 Punishment must therefore be objectively deserved to be "just." Of course, punishment "greater than necessary" cannot be "just" based on the structure of § 3553(a) and the parsimony clause.

Beginning with the concept of "just punishment" requires confronting what is "just." For its part, Probation's excessive recommendation is driven in large part by the offense conduct of Count 3, which is no doubt serious on its own. But how do we calculate what is "just" under these circumstances? Probation then opines that a sentence of 30 years would be appropriate for a young man with no criminal history who committed this offense in his late teens and early 20s and did not solicit the images of Minor 1 or Minor 2 for distribution, for sharing or for dissemination of any kind and never engaged in any sexual contact with a minor. There are numerous cases in this district cited below in Section 2(d) Unwarranted Sentencing Disparities where Defendants repeatedly sexually abused and/or participated in abusing minors and solicited pornographic videos and pictures of minors who received well below the statutory 15 year minimum in this case. Even though Hanahan's offense conduct in this case is undoubtedly serious. Under no circumstance could

a sentence close to Probation's recommendation of thirty years be considered "just punishment." Thus, the issue of just punishment is presented first before the Court considers the 3553(a) factors.

### b. Nature and Circumstances of the Offense—§ 3553(a)(1).

In determining the sentence to be imposed, the Court must consider the "nature and circumstances of the offense." 18 U.S.C. § 3553(a)(1). Unquestionably, soliciting sexual pictures of a 6 year old and a 14 year old is an extremely serious offense. At the same time, Hanahan is not accused of ever attempting to meet Minor 1 or Minor 2 or ever attempting to participate in sexual activity with a minor. There has to be some sort of balanced approach to the nature of the wrong that was committed. It is also important to note that Hanahan did not solicit the images of Minor 1 or Minor 2 for distribution, for sharing or for dissemination of any kind. As a result of the widespread and unmonitored use of social media amongst young people, this environment also helped corrupt Hanahan's already skewed perception of relationships and contributed to the offense conduct for which he accepts responsibility.

Hanahan committed the offenses in Count 3 and Count 5 at the ages of 19 and the age of 21. The Supreme Court's opinion in *Gall v. United States*, 552 U.S 38 (2007), emphasized a previously neglected mitigating factor; *i.e.*, a defendant's immaturity at the time of the offense. The district court rendering the below guideline sentence in *Gall* placed significant import on the defendant's age (a college student) at the time of his offense. In upholding the sentence, the Supreme Court emphasized the district court's reliance on the defendant's youth, lack of maturity, and drug use at the time of his offense. The Court took particular note of the district court's reliance on medical studies indicating that full brain development, and therefore maturity may not be reached until the mid-twenties—an age that Hanahan recently obtained. The district court in *Gall* stated:

> Immaturity at the time of the offense conduct is not an inconsequential consideration. Recent studies on the development of the human brain conclude that human brain development may not become complete until the age of twenty-five. *See* Elizabeth

> Williamson, *Brain Immaturity Could Explain Teen Crash Rate,* Wash. Post, Feb. 1, 2005 at A01 (summarizing a recent National Institutes of Health ("NIH") study that suggests "that the region of the brain that inhibits risky behavior is not fully formed until age 25"). This is of critical importance in the area of criminal law. The Sentencing Commission, in its studies, has deduced that recidivism rates drop as the age of defendants increase. *See United States v. Nellum,* No. 2:04-cr-30-ps, 2005 WL 300073 (N.D.Ind. Feb. 3, 2005). The Supreme Court based its most recent death penalty decision, *Roper v. Simmons,* on studies indicating adolescents are less culpable for their actions than adults. *See* --- U.S. ----, ----, 125 S.Ct. 1183, 1195, 161 L.Ed.2d 1 (2005) (stating that "as any parent knows and as the scientific and sociological studies respondent and his amici cite tend to confirm, '[a] lack of maturity and an underdeveloped sense of responsibility are found in youth more often than in adults and are more understandable among the young. These qualities often result in impetuous and ill-considered actions and decisions.' (citations omitted) It has been noted that 'adolescents are overrepresented statistically in virtually every category of reckless behavior.'") (quoting Arnett, *Reckless Behavior in Adolescence: A Developmental Perspective,* 12 Developmental Review 339 (1992)). While the *Roper* court held imposition of the death penalty is unconstitutional for those persons who committed the death-eligible crime before the age of eighteen, the recent NIH report confirms that there is no bold line demarcating at what age a person reaches full maturity. While age does not excuse behavior, a sentencing court should account for age when inquiring into the conduct of a defendant.

*United States v. Gall*, 374 F.Supp.2d 758, 762 fn. 2 (S.D. Iowa 2005).

Hanhan's relative youth and cognitive functioning is a critical consideration in this case. Courts have recognized that juvenile offenders must be treated differently, and the most severe sentences must be reserved for only the most incorrigible individuals who are simply not amenable to rehabilitation. Indeed, in *Miller v. Alabama,* 567 U.S. 460 (2012), the Supreme Court wrote that children are "constitutionally different from adults for the purposes of sentencing" because "juveniles have diminished culpability and greater prospects for reform" and "are less deserving of the most severe punishments." *Miller*, 567 U.S. at 471. Neurological science continues to develop, and it has been recently observed that brain development may not end until age 22. *See Ruiz v. United States*, 5 F.4th 839, 843 (7th Cir. 2021) (Wood, J., dissenting from denial of rehearing en banc) ("Neurological science continues to advance. Indeed, the American Association on Intellectual and Developmental Disabilities (AAIDD), a respected organization whose work is often cited by the

Supreme Court, now defines the end of the human intellectual development period as age 22, not age 18.").

Even prior to *Miller*, courts recognized a defendant's youth, both at the time of the offense conduct and at the time of events associated with the offense conduct, as strong mitigation that justified reduced sentences. *United States v. Polito*, 215 Fed.Appx. 354, 357 (5th Cir. 2007) (per curiam) (upholding a sentence of probation in child pornography case when use began during adolescence); *United States v. Stern*, 590 F. Supp. 2d 945, 952-53 (N.D. Ohio 2008) (imposing a sentence of one year and one day in possession of child pornography case when defendant was 14 years old at the time he began viewing child pornography).

### c. History and Characteristics of Defendant—§ 3553(a)(1).

Hanahan has indicated to both the United States Probation Officer and Dr. Breniznger that he was bullied mercilessly in school about his appearance, clothing and his family's limited financial means. As a result, he developed a very small social network of friends while growing up and grew to dislike school immensely. After he his parents divorced, he moved from Crete, Il and lost the very small circle of friends that he had. It was at this time that Hanhan spent more time online as no one could see him and judge him based on his appearance and social status. As a result, Hanahan spent more time online with "online friends", as it "felt easier than real life." Hanahan's father acknowledges that he spent very little time with him in his childhood and adolescence.

Hanahan has pled guilty to this extraordinarily serious offense conduct knowing that he will spend many, many years in prison and that while incarcerated, he will likely be targeted for being a child sex offender. Additionally, he has spent the last 4 and ½ years on home confinement while on bond on this case. Hanahan has not had a single violation of his pretrial release order. Courts have recognized that "a defendant's unusual susceptibility to abuse by other inmates while in prison may warrant a downward departure." *United States v. Parish*, 308 F.3d 1025, 1031 (9th Cir. 2002)

(citing *Koon*, 518 U.S. at 111-12; *United States v. Lara*, 905 F.2d 599, 603 (2d Cir. 1990) (affirming below guideline sentence for defendant based on his diminutive in size, bisexuality, and immaturity); *United States v. LaVallee*, 439 F.3d 670 (10th Cir. 2006) (affirming downward departure based on the defendant's vulnerability in prison due to his former status as prison guard and publicity of case). The BOP has identified several factors that render inmates particularly vulnerable to abuse in prison. Those factors include "being perceived as gay, having been a victim of sexual abuse in the past, suffering from mental illness, and being a known sex offender, particularly against children. …. An individual with *any one* of these characteristics is considered especially vulnerable to physical or sexual assault while incarcerated." *United States v. D.W.*, 198 F. Supp. 3d 18, 66 (E.D.N.Y. 2016) Hanahan meets all of these criteria; thus he will spend his years trying to avoid being prey for other inmates and regrettably, staff. *See D.W.*, 198 F. Supp. 3d at 73 (quoting Alice Ristroph, *Sexual Punishments*,15 Colum. J. Gender & L. 139, 159-60 (2006) (" '[S]ex offenders are a distinct and disfavored category within prison populations, subject to heightened abuse from both corrections officers and fellow inmates. By many reports, sex offenders are themselves disproportionately likely to be the target of sexual assault in prison.'")

    d.  **Unwarranted Sentencing Disparities—§ 3553(a)(6).**

**Cases in this District**

    A sentence of 15 years, the mandatory minimum in this case, would further the purpose of avoiding unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar or, in many circumstances, more egregious conduct. This is particularly true here, where the government allowed such defendants to plead guilty to lesser offenses despite more serious conduct. For example, in *United States v. Willis*, 16 CR 542, the defendant, an attorney, was initially charged with Conspiracy to Engage in the Sexual Exploitation of a Child and

Production of Child Pornography, which carried a mandatory minimum sentence of 15-years imprisonment. Ultimately, the government allowed Willis to plead guilty, via a superseding information, to two counts of possession of child pornography, which did not carry a mandatory minimum sentence. For eight years, Willis and Individual A conspired to recruit and entice boys as young as 13-years-old to perform sexual acts and send sexual photographs of themselves for money. Many of the boys were brought to Willis' house where he gave them drugs (Ativan, cocaine, marijuana) and alcohol to gain compliance and reduce inhibitions. Willis and Individual A would then produce child pornography, in that they would take photographs and videos of the boys naked, of Individual A performing sexual acts on the boys, and of Willis performing sexual acts on the boys. Willis paid the boys for partaking in the lewd and lascivious photographs and videos. Once the boys turned 18, and even after a federal investigation was under way, Willis attempted to conceal his participation in the offense by inducing the victims to sign contracts saying they were above age. Because the criminal conduct occurred several years before charges were filed, the 2000 Guidelines were applied, resulting in a total offense level of 26 and a guidelines range of 63 to 78 months' imprisonment. On February 8, 2018, Willis was sentenced to four years' imprisonment on each count of the superseding information, to run concurrently, or 48 months' imprisonment.

In *United States v. Jones*, 17 CR 417 (N.D. Illinois), Jones a YouTube musician used his position to persuade and entice young 14 and 15-year-old girls to produce child pornography and send it to him. For over two years, Jones convinced young girls to "audition" for him and specifically directed each girl as to the sexual conduct he wanted them to perform on video. Moreover, a year before his arrest, Jones was publicly outed for the same behavior. As the government noted in its sentencing memorandum, "[e]ven when he got caught, albeit not by law enforcement, instead of using it as an opportunity to get help, to begin serious mental health treatment, and to stop producing child pornography, he continued to lie about and engage in illegal

behavior." See 17-CR-417, Dkt. #90, p. 28-30. Jones was ultimately charged with two counts of production of child pornography however, the government permitted Jones to plead guilty to a single count of receipt of child pornography which carried a mandatory minimum of five years' imprisonment. Jones also stipulated to the commission of additional offenses and relevant conduct involving six victims, as well as an additional 30 attempts to persuade other young girls to send him child pornography. Jones faced an adjusted offense level of 41, and a guidelines range of 235-293 months

       In *United States v. Harris* 20 CR 637, Harris a well know star of an overwhelmingly popular Netflix series used his position to persuade and entice young 13-17 year old boys to produce and engage in sexual acts in exchange for money. Harris paid money for boys as young as 13 years old to take pornographic videos of themselves and entice them to meet for sexual purposes. Ultimately, several of these young boys did meet up with Harris to engage in sexual acts. See 20 CR 637, Dkt #155. Harris was sentenced to 144 in the Federal Bureau of Prisons.

       In *United States v. Ames* 16 CR 378, Bradley Ames, successful sports agent in Chicago, repeatedly and over a period of a year paid young boys to engage in sexual acts over the internet using Skype and electronic mail. Ames would pay for young boys to engage in both anal and oral sex and have the videos and images sent to him. Several of these young boys were tricked into engaging in sexual acts with a female alter ego online named "Hannah" in order to seduce these young boys into performing sexually explicit acts on Webcam, which were recorded. Ames also became aware that the website "boysonwebcam," or "BOWC," contained child pornography. Thereafter, Ames obtained child pornography videos from that website, and knowingly received at least eight of those videos on two different occasions. Consistent with each video's title, each of those eight videos contained depictions of minor boys engaged in sexually explicit conduct. At least one of those

videos depicted a prepubescent boy, who also appeared to be under the age of 12, performing oral sex on another minor boy. See 16 CR 378, Dkt #42. Ames received a sentence of 144 months.

Finally, in an out of district case related to the *Ames* case. Christopher Jamieson, a child molester who recruited and tricked minors into producing child pornography plead guilty to receipt of child pornography and was sentenced to 97 months in prison. *U.S. v. Jamieson*, No. 13-252 (E.D.Louisiana). There was a cooperation agreement contained in Jamieson's plea agreement with respect to Bradley Ames and others. Jamieson was only able to cooperate because of his firm entrenchment in the child pornography arena. In any event, Jamieson's cooperation does not negate the fact that despite several aggravating factors in Jamieson's case that are not present in this case, Jamieson received a sentence of 97 months in prison. Most notably, Jamieson had hands-on contact with most of the minor victims in this case, who he called "broke boys." Some of these victims even had long standing sexual relationships with Jamieson. Also significant is that Jamieson acted purely out of greed and profited by sharing the images he produced, while Hanahan's conduct was an outgrowth of psychological factors.

## Conclusion

We ask the Court to balance the advisory sentencing guideline range with Hanhan's youth and other mitigating factors cited above. Specifically, we ask the Court to sentence him to no more than fifteen years in prison, plus a lengthy period of sex offender supervised release. As such, the requested sentence is "sufficient but not greater than necessary" to achieve the sentencing goals espoused in 18 U.S.C. Section 3553.

WHEREFORE, Brandon Hanahan, respectfully requests that this Court sentence him to fifteen years in the Federal Bureau of Prisons to be followed by a 15 year period of supervised release.

                                  Respectfully submitted,


                                   **s/ James D. Tunick**
                                   **JAMES D. TUNICK**, Attorney for Brandon Hanahan

**LAW OFFICE OF JAMES D. TUNICK**
650 N. Dearborn St, Suite 700
Chicago, Illinois 60653
Office (312)994-9100
Cell    (773)425-1657